UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MILTON GARNICA ORELLANA, Individually,
and on behalf of others similarly situated,

                             Plaintiffs,

    -against-                                  **REPORT AND**
                                              **RECOMMENDATION**
                                              17-CV-6854 (JS)(AYS)

YURI MURGAT, Individually, and
LET THERE BE BAGELS PW, INC.,

                             Defendants.
----------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This is an action commenced by Plaintiff, Milton Garnica Orellana ("Plaintiff" or "Orellana"), pursuant to Federal and New York State wage and hour laws. Plaintiff's federal claims are alleged pursuant to the Fair Labor Standards Act (the "FLSA"). His state claims are alleged pursuant to the New York State Labor Law (the "NYLL"). Plaintiff alleges FLSA and NYLL claims on behalf of himself and others similarly situated, seeking unpaid overtime wages and related statutory damages. The "similarly situated" claims are alleged as collective action claims under the FLSA. Finally, Plaintiff alleges that Defendants violated New York State's record-keeping and notice of pay requirements pursuant to Section 195 of the NYLL.

       Named as Defendants are corporate Defendant Let There Be Bagels, PW, Inc. ("LTBB" or the "Corporate Defendant") and individual Defendant Yuri Murgat ("Murgat") (collectively "Defendants"). Presently before the Court is the District Court's referral of Plaintiff's motion for entry of a default judgment and damages, appearing as Docket Entry ("DE") [11] herein. The District Court has referred the motion to this Court to determine both whether a default judgment should be entered and, if so, the appropriate amount of damages, costs and fees to be awarded.

(DE [13].)

For the following reasons, this Court respectfully recommends that the motion for entry of a default judgment be granted, and that damages and fees be awarded as set forth below. In view of the fact that no other individuals opted into the collective action alleged in the complaint, this Court further recommends that damages and fees be awarded to Orellana only, and that the alleged collective action be dismissed, without prejudice.

BACKGROUND

I.  Facts: The Parties and Plaintiff's Employment

Orellana's Complaint alleges that he was employed as a baker by Defendants from in or about 2005 through December 29, 2016 – a period of approximately eleven years. (Compl., DE [1], ¶ 3; Orellana Decl., DE [11-2], ¶ 3.) The Corporate Defendant is alleged to be a New York corporation that Plaintiff characterizes as a "bakery/restaurant" located in Port Washington, New York. (Compl. ¶ 5.) It is alleged to have an annual gross volume of sales in excess of $500,000 and is stated to be an employer engaged in interstate commerce within the meaning of the FLSA. (Id. ¶ 6-7.) Individual Defendant Murgat is stated to be the owner and operator of LTBB, who exercises control over the corporation and its employees, including Plaintiff. (Id. ¶ 7-10; Orellana Decl. ¶ 5-6.)

As to the terms of his employment, Plaintiff alleges that throughout the course thereof, he worked six days per week – from Tuesday through Saturday. (Compl. ¶ 19; Orellana Decl. ¶ 8.) Plaintiff states that he worked eight and one-half (8.5) hours each day, from 3:00 A.M. until 11:30 A.M. (Compl. ¶ 20; Orellana Decl. ¶ 9.) Thus, Plaintiff states that he regularly worked 51 hours per week for Defendants (8.5 hours each day for 6 days each week). (Compl. ¶ 21; Orellana Decl. ¶ 10.)

Despite having worked in excess of forty-hour work weeks for several years, Plaintiff was not paid overtime wages. (Orellana Decl. ¶ 13.) Instead, from 2011 through 2015, Plaintiff was paid a set weekly salary of $650.00, in cash. (Compl. ¶ 22; Orellana Decl. ¶ 11.) From 2016 through the end of his employment, Plaintiff was paid at a weekly rate of $750.00. (Compl. ¶ 23; Orellana Decl. ¶ 12.) In addition to his claim that he was not paid overtime wages, Plaintiff alleges that Defendants failed to provide him with a written notice of his rate of pay, and failed to keep proper payroll records, as required by New York law. (Compl. ¶ 26; Orellana Decl. ¶ 7.)

II.     Claims for Relief

As noted, Plaintiff's factual allegations are set forth in support of claims under both the FLSA and the NYLL. He seeks overtime wages pursuant to both statutes. Additionally, Plaintiff's NYLL claim alleges a violation of Section 195 of that statute for failure to provide written notice of his rate of pay. Plaintiff's Complaint seeks unpaid overtime wages, statutory damages, attorney's fees and costs.

III.    Defendants' Default and the Present Motion

Orellana's Complaint was filed on November 22, 2017. (DE [1].) No Answer was filed, and thereafter, on January 16, 2018, Plaintiff filed a request foentry of default against both Defendants. (DE [9]; Rumack Decl. ¶3.) Plaintiff's request noted that both Defendants were served on December 14, 2017. (Rumack Decl. ¶¶ 4-5.) Proof of service was filed with the Court on January 2, 2018. (Id. ¶ 6.) Plaintiff further noted that, despite the passage of more than twenty days since such service, no Answer was filed on behalf of either Defendant. (Id. ¶¶9-10.) On January 16, 2018, the Clerk of the Court noted Defendants' defaults. (DE [10].)

Thereafter, on February 5, 2018, Plaintiff filed a motion for entry of a judgment by

default.  (DE [11].)  Service of that motion was made on Defendants on February 5, 2018.  (DE [12].)  On April 19, 2018, that motion was referred to this Court for Report and Recommendation, as set forth above.  (DE [13].)  Plaintiff served the District Court's referral order on Defendants on April 20, 2018.  (DE [14].)

IV.     The Motion for Default Judgment and Supporting Papers

Orellana seeks unpaid wages and liquidated damages in the amount of $38,251.96. Plaintiff's wage calculation is based upon six years of work, which is the statute of limitations for claims made under the NYLL.  As described above, Plaintiff's motion includes a signed declaration setting forth the number of hours he worked and the flat rate wages he was paid. (See generally Orellana Decl., DE [11-2].)  Plaintiff calculates wages owed based upon his declaration that he worked six weeks in 2011 and fifty-two weeks for the years 2012 thought the end of 2015.  He alleges that he worked fifty-one weeks during the year 2016.  Specifically, he seeks overtime wages due as follows.

First, for the period of time when Plaintiff was paid a flat weekly wage of $650.00 for fifty-one hours of work per week, Plaintiff was paid at an hourly rate of $12.75.  (DE [11-2] at 6.) This hourly rate of pay leads to an overtime rate of $19.12 (regular rate of pay of $12.75 X 1.5 = $19.13). Since Plaintiff was paid only at his hourly rate, and not the overtime rate of pay, he states that he is entitled to an additional $6.38 for eleven hours of overtime work per week, or an additional $70.10 per week.[1]  For the year 2011, Plaintiff seeks six weeks of overtime wages in the total amount of $420.59 ($70.10 in weekly overtime wages owed x 6 weeks).[2]  For the

---

[1] The numbers stated in Plaintiff's declaration are incorrect. The correct overtime calculation is $6.38 x 11 = $70.18 per week for the time periods where he was paid $650.00 weekly.
[2] The correct calculation is $421.08.

years 2012-2015, Plaintiff seeks yearly overtime wages of $3,645.10.[3] For the time period when Plaintiff was paid $750.00 per week, his hourly rate of pay was $14.71. Based upon eleven overtime hours worked each week, and the hourly overtime wage owed at $7.36 per hour, Plaintiff states that he is owed weekly overtime wages in the amount of $80.88.[4] For the fifty-one weeks that he worked during the year 2016 he seeks a total of $4,125.00 in overtime wages.[5]

Based upon the foregoing, the total overtime wages sought for the entire statutory period is $19,125.98. Plaintiff also seeks NYLL statutory damages in the amount of 100% of his unpaid wages in the same amount for a total wage damages claim of $38,251.96. Moreover, Plaintiff seeks $5,000.00 for NYLL record keeping violations.[6] In addition to unpaid overtime wages and record keeping violations, Plaintiff seeks an award of attorney's fees in the amount of $4,425.25. This request, which amounts to a requested hourly rate of approximately $362.00, is supported by Plaintiff's attorney's billing records, which detail approximately eleven hours of work spent on Orellana's case, from the drafting of the Complaint to the within motion for default judgment, as well as $522.00 in fees and disbursements.[7]

---

[3] The correct calculation is $3,649.46 per year.
[4] The correct overtime calculation is $7.36 x 11 = $80.96 per week for the time periods where Plaintiff was paid $750.00 weekly.
[5] The correct calculation is $4,128.96.
[6] While not originally stated in Plaintiff's declaration, Plaintiff submitted a supplemental declaration asking for the aforementioned damages. (See DE [15].)
[7] While Plaintiff's attorney's declaration refers to the law practice of Darren Rumack, the attorney of record in this matter, it also makes reference to "Mr. Lei" an attorney who also practices law with Plaintiff's counsel. However, all of the hours worked in the time records submitted in support of the present motion are referred to as having been performed by "Darren," a reference to Mr. Rumack. Since none of the hours claimed are attributed to Mr. Lei, the Court disregards the reference to him and makes clear it recommends awarding attorney's fees only with respect to work performed by attorney Rumack.

DISCUSSION

I.  Legal Principles

    A.  Standard for Entering a Judgment of Default

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process before entering a judgment of default against a party that fails to respond or defend. See Fed. R. Civ. P. 55; see also Romero v. Floris Constr., Inc., No. 1:16-CV-4282, 2017 WL 5592681, at *2 (E.D.N.Y. Nov. 20, 2017). First, the party seeking a judgment of default must ascertain a certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). After the Clerk issues a certificate, the moving party then requests an entry of a judgment of default. See id. at 55(b); see also Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565, 2018 WL 1513628, at *2 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018). All of the well-pleaded factual allegations in the complaint pertaining to liability are deemed to be true. See Qiu Hua Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *2 (E.D.N.Y. May 25, 2017) (citing Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (E.D.N.Y. 1992). However, it is up to the court to determine whether the unchallenged facts constitute a legitimate cause of action. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

    B.  Standard Required Under Fair Labor Standards Act

In order to establish liability under the FLSA, the plaintiff must prove either individual liability or enterprise liability. See Leon v. Chen, No. 16-CV-480, 2017 WL 1184149, at *4 (E.D.N.Y. Mar. 29, 2017). Individual liability applies to any individual "engaged directly in interstate commerce or in the production of goods for interstate commerce." Coley, 2018 WL 1513628, at *3 (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8

(1985)). On the other hand, enterprise liability applies to entities that: "(1) perform related activities "for a common business purpose"; (2) have "employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (3) have an "annual gross volume of sales made or business done [ ] not less than $500,000." Coley, 2018 WL 1513628, at *3 (quoting 29 U.S.C. § 203(r)–(s)) (alteration in original).

An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Here, Plaintiff demonstrates this by alleging in his Complaint that he is employed by Defendants. See Garcia v. Badyna, No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (stating that since plaintiff alleged in his complaint that he is an employee as defined by the FLSA, for the purpose of the default, he qualifies as an employee); see also Compl. ¶¶ 3, 19, 20, 21.

Furthermore, Plaintiff has shown in the Complaint that the Corporate Defendant is an enterprise that engaged in the production of goods for commerce. See 29 U.S.C. § 203(s)(1)(A)(i)-(ii); see also Compl. ¶ 7. Plaintiff has also alleged in the Complaint that the Corporate Defendant has an annual gross volume of sales in excess of $500,000. See Compl. ¶ 6. While Plaintiff did not specifically allege what products were involved in interstate commerce, it is likely that some of the materials utilized in a bakery come from outside the state. See Luna v. Gon Way Constr., Inc., No. 16 Civ. 1411, 2017 WL 835321, at *10 (E.D.N.Y. Feb. 14, 2017), adopted by, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017); see also Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1107655, at *1 (E.D.N.Y. Mar. 30, 2012) (stating it was "inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York").

Moreover, Murgat is an employer under the FLSA. An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a). The Second Circuit has employed a multifactor test in determining whether one qualifies as an employer for the purposes of liability. See Coley, 2018 WL 1513628, at *4. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984)). In this case, Murgat hired and fired employees, set work schedules, and determined the rate of payment. See Compl. ¶¶ 9, 27, 28, 29. As a result, Murgat is deemed to be an employer under the FSLA.

  C. <u>Standard Required Under New York State Labor Law</u>

The NYLL "is the state analogue to the federal FLSA," and, as such, it "echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements." Rodriguez v. Ridge Pizza Inc., No. CV 16-0254, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (quoting D'Arpa v. Runway Towing Corp., No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013)). As a result, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations. See Guardado v. 13 Wall St., Inc., No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), adopted by, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016). Therefore, since Plaintiff is considered an employee and Defendants are considered employers under the FLSA, they are also deemed to be so under the NYLL.

Additionally, the NYLL requires that an employer furnish each employee with a record of hours worked, rate of pay, and total hours worked per week. See N.Y. Labor Law § 195(3). Plaintiff proffers that Defendants failed to provide this information. See Compl. ¶ 26. For this

reason, Plaintiff has alleged a violation of N.Y. Labor Law § 195(3).

II.  Damages

    A.  Standard Applicable to a Damages Award Following Default Judgment

Unlike allegations pertaining to liability and proximate cause, allegations set forth in connection with damages are not deemed admitted on account of a defendant's default. See, e.g., Greyhound Exhibitgroup, 973 F.2d at 158; Olvera v. Los Taquitos Del Tio Inc., No. 15 Civ. 1262, 2015 WL 3650238 *1 (E.D.N.Y. June 11, 2015); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364, at *2 (E.D.N.Y. June 9, 2015).  Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement to damages to a "reasonable certainty."  Olvera, 2015 WL 3620364, at *1.  Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes."  Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).  While the party seeking damages is entitled to all reasonable inferences from the evidence it offers, a court must "ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded."  Avelar v. Quiros, Inc., No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981)).

The court determining damages has the discretion to hold an evidentiary hearing. See Fed. R. Civ. P. 55(b)(2); see also Castellanos v. Deli Casagrande Corp., No. CV 11-245, 2013 WL 1207058, at *3 (E.D.N.Y. Mar. 7, 2013), adopted by, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013).  Such a hearing is not required, however, so long as documents submitted, such as detailed affidavits, allow the court to conduct an inquiry sufficient to establish damages to a

reasonable certainty.  See Avelar, 2015 WL 1247102, at *7.  Where there has been a default in a case alleging wage violations, the plaintiff's recollection and estimatation of the hours worked are presumed correct and are often sufficient to support a damages award.  See e.g., Rodriguez, 784 F. Supp. 2d at 126; Yin v. Kim, No. 07-CV-1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008).

      B.      Overtime Wages

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, [and/] or their unpaid overtime compensation." 29 U.S.C. § 216(b).  Like the FLSA, the NYLL provides that an employee is entitled to recover unpaid minimum wages and overtime.  See 12 N.Y.C.R.R. §§ 142-2.2-2.4.  Unpaid overtime wages are calculated by multiplying the wage rate by 0.5 to determine the amount owed per hour for every hour over 40 hours worked.  See 29 U.S.C. § 207(a)(1).  That amount is then multiplied by the number of hours of overtime worked per week to yield a sum of weeks of overtime pay owed.  The totals for each week are then aggregated to calculate the total amount of overtime wages owed. See Mendez v. Casa Blanca Flowers, Ltd., No. 12-CV-5786, 2014 WL 4258943 * 3 (E.D.N.Y. July 8, 2014), adopted by, 2014 WL 4258988 (Aug. 27, 2014).  "Even when wages exceed the minimum prescribed by Congress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]." Avelar, 2015 WL 1247102, at *5 (quoting Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944)) (alterations in original).

While both the federal and state statutory schemes place the burden of showing hours worked on the employee, see Avelar, 2015 WL 1247102, at *6, the employer is charged with maintaining accurate records of an employee's hours.  See Guaman, 2015 WL 362036, at *7.

When the employer's records are inadequate, an employee may meet his burden of showing hours worked by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

    C.    Liquidated Damages

Both Federal and New York State law provide for enhanced damages equivalent to 100% of the total amount of the wages found to be due. As to such enhanced damages, federal law places the burden of establishing that liquidated damages should not be awarded on the employer. See Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir.1997). Under state law, willfulness is established where employers voluntarily underpay employees. Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). These standards have been recognized to be essentially the same. See id. Where, as here, the employer defaults, an award of liquidated damages is appropriate. See Guaman, 2015 WL 3620364, at *10.

    D.    Wage Theft Prevention Act Damages

Under the NYLL, employers are required to furnish their employees with accurate, specifically enumerated wage statements. See N.Y. Lab. Law § 195(3). Plaintiff seeks to recover damages for Defendants' failure to provide accurate wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"). Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500. See Li v. Leung, No. 15 Civ. 5262, 2016 WL 5369489, at *16 (E.D.N.Y. June 10, 2016), adopted as modified by, 2016 WL 5349770 (Sept. 23, 2016). On and after February 27, 2015, however, the WPTA entitles Plaintiff to $250 for each work day that the violation occurred, not to exceed $5,000. See

N.Y. Lab. Law § 198(1-d). As Plaintiff asserts he was never given a proper wage statement, he is entitled to WTPA damages.

D. <u>Facts Necessary to Plead a Claim for Wages and Overtime Damages</u>

In view of the fact that it is Plaintiff's burden to prove entitlement to damages to a "reasonable certainty," this Court must consider the nature of the proof required to prove such damages where, as here, a plaintiff seeks overtime damages. The Second Circuit has spoken explicitly as to the level of pleading required to state a claim for overtime wages. <u>See</u> <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 114 (2d Cir. 2013); <u>Nakahata v. New York–Presbyterian Healthcare Sys., Inc.</u>, 723 F.3d 192, 200 (2d Cir. 2013); <u>Dejesus v. HF Mgmt. Servs., LLC</u>, 726 F.3d 85, 88 (2d Cir. 2013).

Similar to the "reasonable certainty" standard required to prove entitlement to default damages, the Second Circuit has held that a plaintiff seeking to state a claim for overtime wages must plead facts sufficient to support a "reasonable inference" that he worked more than forty hours in a given week. <u>See</u> <u>Dejesus</u>, 726 F.3d at 90. While such hours need not be pled with exact "mathematical precision," a plaintiff seeking overtime wages is required to draw from his "memory and experience" when pleading hours worked. <u>Id.</u> Facts thus drawn from memory must provide "sufficient detail about the length and frequency" of hours worked so as to "support a reasonable inference that [plaintiff] worked more than forty hours in a given week." <u>Id.</u> The pleading of such factual context allows a plaintiff to "nudge [his] claim 'from conceivable to plausible.'" <u>Id.</u> (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Lundy</u>, 711 F.3d at 114 n.7 (stating that an approximation of overtime hours worked, while "not needed in all cases," may "help draw a plaintiff's claim closer to plausibility").

With these pleading standards in mind, the Court turns to consider the issues referred to this Court for report and recommendation, i.e., whether Plaintiff has sufficiently pled his claim for damages, and, if so, the amount to be awarded.

III.    Calculation of Damages

Plaintiff's overtime claims are supported by the Complaint and declaration allegations referred to above. Plaintiff's declaration recalls both the dates and hours worked. It also recalls his weekly wage. The Court has considered the allegations set forth above and holds that those allegations do, in fact, rise to the level of pleading required by the Second Circuit, and are therefore sufficient for this Court to make a reasonably specific determination as to damages.

As to overtime wages, Plaintiff is entitled to 100% of all overtime wages owed. Plaintiff states that he worked six days per week – from Tuesday through Sunday. (Compl. ¶ 19; Orellana Decl. ¶ 8.) Plaintiff worked eight and one-half hours per day, which lasted from 3:00 AM until 11:30 AM. (Compl. ¶ 20; Orellana Decl. ¶ 9.) These shifts resulted in Plaintiff working fifty-one hours per week for Defendants, eleven of which should have been compensated at one and one-half times his regular rate. (Compl. ¶ 21; Orellana Decl. ¶ 10.) From 2011 through 2015, Plaintiff was paid a base salary of $650.00 per week, regardless of how many hours he worked. (Compl. ¶ 22; Orellana Decl. ¶ 11.) From 2016 to the end of his employment, Plaintiff was paid a base salary of $750.00, regardless of how many hours he worked. (Compl. ¶ 23; Orellana Decl. ¶ 12.) Therefore, the overtime pay due to Plaintiff is $19,119.86, as set forth below.[8]

| Time Period | Number of Weeks | Hourly Rate of Pay | Overtime Owed per week | Overtime Wages Due |
|---|---|---|---|---|
| 11/22/2011-12/31/2011 | 6 | $12.75 | $70.18 | $421.08 |
| 1/1/2012-12/31/2012 | 52 | $12.75 | $70.18 | $3,649.36 |

---

[8] The damage calculations in Plaintiff's declaration are incorrect. The Court will recommend that damages be awarded based on the numbers calculated throughout this Report and Recommendation.

| 1/1/2013-12/31/2013 | 52 | $12.75 | $70.18 | $3,649.36 |
| --- | --- | --- | --- | --- |
| 1/1/2014-12/31/2014 | 52 | $12.75 | $70.18 | $3,649.36 |
| 1/1/2015-12/31/2015 | 52 | $12.75 | $70.18 | $3,649.36 |
| 1/1/2016-12/29/2016 | 51 | $14.71 | $80.96 | $4,128.96 |

Plaintiff is also entitled to 100% in liquidated damages on his overtime compensation claim. As such, Plaintiff is entitled to $19,147.48 in actual damages and a like amount in liquidated damages, for a total of $38,294.96.

Under the WTPA, "[a]ny employee not provided [a wage] notice within ten business days following their first day of employment, 'may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." Rodriguez, 2018 WL 1335358, at *9 (quoting Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015) (first alteration in original); see also N.Y. Labor. L. § 198(1-b). Plaintiff states that he never received written notice of his pay during the course of his employment. (Compl. ¶ 26; Orellana Decl. ¶ 7.) Therefore, this Court recommends awarding Plaintiff $5,000.00 for Defendants' record keeping violations, pursuant to Section 195 of the NYLL.

In summary, this Court respectfully recommends that Defendants be ordered to pay Plaintiff $19,147.48 for unpaid overtime wages for hours worked in excess of 40 hours per week, $19,147.48 in liquidated damages, and $5,000 for Wage Theft Prevention Act violations. This damages amount totals $43,294.96.

IV.     Attorney's Fees and Costs

Both the FLSA and the NYLL provide for the recovery of reasonable attorneys' fees and costs by successful plaintiffs. See 29 U.S.C. §216(b); N.Y. Labor L. §§198(1-a),(1-d). The statutes similarly allow prevailing plaintiffs to recover costs from defendants. See 29 U.S.C.

§216(b); N.Y. Labor L. §663(1). Counsel seeking such awards bear the burden of supporting their claims of hours expended by submission of accurate, detailed and contemporaneous time records. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

When determining an award of attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. ex rel. Winn., 559 U.S. 542, 551 (2010). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee'." Id. at 553 (citation omitted); see also Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 184, 190–91.

The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Additionally, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hugee v.

Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012). This Circuit requires contemporaneous billing records for each attorney. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011).

Plaintiff seeks $3,902.25 in attorney's fees and $522.00 in costs and has submitted a detailed invoice from his attorney, dated February 5, 2018. (See DE [11-4].) The invoice provides an itemization of time and services expended in this case, reflecting time spent, tasks performed as well as costs incurred. (See id.) The records reflect that Plaintiff's attorney spent a total of 10.78 hours working on this case at a billing rate of $361.99 per hour. (See id.)

The Court finds these rates and hours expended to be within the reasonable range. See Douyon v. NY Med. Health Care, P.C., 49 F. Supp. 3d 328 (E.D.N.Y. 2014) ("To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits.") (collecting cases); see also Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 for junior associates") (collecting cases); Ferrara v. Professional Pavers Corp., No. 11-CV-1433, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from approximately $200 to $400 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals"). Therefore, this Court finds it reasonable to grant the requested attorney's fees in the amount of $3,902.25. This Court also recommends granting the $522.00 requested for fees and disbursements, resulting in a total award of fees and costs in the amount of $4,424.25.

RECOMMENDATION

For the foregoing reasons, this Court recommends that Plaintiff's motion for entry of a default judgment, appearing at Docket Entry 11 herein, be granted, and that damages be awarded in the amount of $43,294.96, as well as attorney's fees and costs in the amount of $4,424.25, for a total monetary award of $47,719.21. Further, in view of the fact that no other person opted into the collective action alleged in the Complaint, this Court recommends that damages and fees be awarded to the named Plaintiff only, and that the alleged collective action be dismissed, without prejudice.

OBJECTIONS

A copy of this Report and Recommendation is being sent to Plaintiff's counsel by electronic filing. Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Defendants at their last known address(es) by certified mail, and file proof of service on ECF by August 29, 2018. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. See 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); Ferrer v. Woliver, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

**SO ORDERED:**

Dated: Central Islip, New York
       August 24, 2018

                                                         /s/ Anne Y. Shields
                                                         ANNE Y. SHIELDS
                                                         United States Magistrate Judge